## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————

GRACE PROULX,                                      )
                                                   )
    Plaintiff,                 )  Civil Action No.
                                                   )  19-12506-FDS
  v.                                       )
                                                   )
CATHARINE MINTZER, M.D.;                           )
BELMONT MEDICAL ASSOC., INC.;                      )
LONNI L. LARSEN; CVS PHARMACY,                     )
INC.; PROMETHEUS LABRATORIES,                      )
INC.; and NESTLE HEALTH SCIENCE,                   )
SA,                                                )
                                                   )
                                                   )
    Defendants.                )
———————————————————————)

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REMAND

SAYLOR, C.J.

  This is a lawsuit arising out of an alleged adverse reaction to a prescription drug known as Allopurinol. Plaintiff Grace Proulx has filed suit against her physician, her pharmacist, the pharmaceutical company, and various other entities on a variety of state-law claims.

  Proulx is a resident of Somerville, Massachusetts. In July 2016, she began to experience joint pain and swelling. She sought treatment from Dr. Catharine Mintzer, a physician in Belmont, Massachusetts. Dr. Mintzer diagnosed gout and prescribed a short course of Prednisone.

  When that treatment did not fully resolve the issue, Dr. Mintzer prescribed a course of Allopurinol. That prescription was filled by pharmacist Lonni Larsen at a CVS Pharmacy in Somerville, Massachusetts.

Unfortunately, Proulx soon developed a relatively rare condition, called Stevens Johnson Syndrome, that is triggered by a reaction to certain types of medications.  According to the complaint, she required hospitalization and extensive treatment and has suffered lasting injuries from her reaction to the drug.

On August 8, 2019, Proulx filed this complaint in Middlesex County Superior Court. The named defendants are Dr. Mintzer; her employer, Belmont Medical Associates, Inc.; Larsen; her employer, CVS Pharmacy, Inc.; Prometheus Laboratories, Inc.; and the parent company of Prometheus, Nestle Health Sciences, SA.  Prometheus owned the rights to branded Allopurinol during the relevant time period, and is therefore alleged to be responsible for labelling on the drug, including its generic version.

The present dispute concerns an issue of subject-matter jurisdiction.  On December 12, 2019, Prometheus removed the case to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).  The parties are not completely diverse; plaintiff Proulx is from Massachusetts, as are three of the defendants (Dr. Mintzer, Belmont Medical Associates, and Larsen). Prometheus nonetheless contends that the non-diverse defendants were fraudulently joined or, in the alternative, fraudulently misjoined.  Proulx has moved to remand the case to the Superior Court.

For the following reasons, the motion will be granted and the case will be remanded to state court.

## I.      **Background**

The facts are stated as set forth in the complaint and the notice of removal.

## A.    **The Parties**

Grace Proulx is a resident of Somerville, Massachusetts.  (Compl. ¶ 1).[1]

Catherine Mintzer, M.D., is a licensed physician practicing in Massachusetts.  Although her citizenship is not alleged in the complaint, it is undisputed that she is a resident of Massachusetts.

Belmont Medical Associates, Inc., is a Massachusetts corporation with a business address of 725 Concord Ave. in Cambridge, Massachusetts.  (*Id*. ¶ 2-3).  Mintzer was an employee of Belmont Medical Associates at all relevant times.  (*Id.*).

Lonni Larsen is a licensed pharmacist.  Again, although her citizenship is not alleged in the complaint, it is undisputed that she is a resident of Massachusetts.

CVS Pharmacy, Inc. is a foreign (that is, non-Massachusetts) corporation.  (*Id.* ¶ 5). Larsen was an employee at the CVS Pharmacy located at 532 Medford Street in Somerville, Massachusetts, at all relevant times.  (*Id.* ¶ 4).

Prometheus Laboratories, Inc. is a California corporation. (*Id.* ¶ 6).  It is a subsidiary of Nestle Health Science, SA, a Swiss Corporation. (*See id.* ¶ 40).

## B.    **Plaintiff's Medical Course**

In July 2016, Proulx began experiencing swelling and joint pain in her left foot.  (*Id.* ¶ 9). She sought treatment with Dr. Mintzer, who detected elevated levels of uric acid in her blood and diagnosed gout.  (*Id.*).  Dr. Mintzer prescribed the drug Prednisone.  (*Id.*).

On August 9, 2016, Proulx had a follow-up appointment.  Dr. Mintzer noted that Proulx's "acute gout was resolved but some swelling [remained] in [her left] foot."  (*Id.* ¶ 10).  Dr.

---

[1] The complaint re-starts the paragraph numbers after the introduction.  Unless indicated otherwise, all citations refer to the numbering that begins on page two of the complaint.

Mintzer did not perform any additional testing for uric acid levels.  (*Id.*).  She prescribed a course of Allopurinal at a dose of 300 milligrams once a day for 90 days.  (*Id.*).  According to the complaint, she did not warn Proulx concerning potential adverse reactions associated with her new course of treatment.  (*Id.*).

That same day, Dr. Mintzer's office sent the Allopurinal prescription to a CVS pharmacy in Somerville, where it was filled by Larsen, the pharmacist.  (*Id.* ¶ 11).  According to the complaint, rather than the Allopurinol labelling approved by the U.S. Food and Drug Administration, the prescription came with a one-page document entitled "Patient Prescription Information."  (*Id.* ¶ 12).  That document allegedly differed from the warning normally included with the generic version of the drug, among other reasons because it omitted warnings about discontinuing use of the drug at the first signs of eye irritation.  (*Id.* ¶ 80-81, 83).

On September 7, 2016, Proulx began experiencing pain, swelling, and redness in her eyes.  (*Id.* ¶ 13).  She went to CHA Somerville Hospital, where she was prescribed antibiotic eye drops and instructed to seek further medical attention if her symptoms worsened.  (*Id*)

By September 8, Proulx's symptoms had worsened.  (*Id.* ¶ 14).  She arrived at the Mount Auburn Hospital Emergency Department with redness and swelling to both eyes, rash on her chest and back, blisters in her mouth and lips, difficulty swallowing, and vaginal irritation.  (*Id.*).  She reported her Allopurinol use, and was diagnosed with Stevens Johnson Syndrome ("SJS").  (*Id.*).

According to the complaint, SJS is a "drug-induced mucocutaneous disease" that creates burn-like injuries to the skin.  (*Id.* ¶ 1).  The condition can affect not only the outside of a patient's skin, but also inner "mucosal surfaces, including eyes, mouth, throat, esophagus, lungs, stomach, colon, urogenital [areas] and vagina."  (*Id.*).  It carries a mortality rate of "30-80%" and

may cause "permanent blindness, renal failure, vaginal scarring and sterilization, pulmonary and neuropsychological deficits, and kidney injury." (*Id.*).

On the evening of September 8, Proulx was transferred to the ICU at Brigham and Women's Hospital. She was observed to be suffering from extensive oral, vaginal, and ophthalmologic lesions. (*Id.* ¶ 15-16).

On September 12, she was transferred to the hospital's burn unit. (*Id.* ¶ 16). While being treated at Brigham and Women's Hospital, she tested positive for a genetic variation that is strongly associated with SJS. (*Id.* ¶ 17). People of Portuguese descent, such as Proulx, are alleged to have this variation more commonly than the general population. (*Id.*).

Proulx was hospitalized for approximately a month, after which she was discharged to a skilled nursing facility. (*Id.* ¶ 18-19). According to the complaint, she has suffered permanent disfiguration, vision loss, and other serious injuries. (*Id.* ¶ 19).

### C.     Allopurinol Labelling and Marketing

In April 2001, Prometheus "acquired the rights to branded Allopurinol, Zyloprim." (*Id.* ¶ 39). In May 2011, Nestle purchased Prometheus. (*Id.* ¶ 40). [2]

The claims against Prometheus and Nestle stem from their ownership, labelling, and marketing of branded Allopurinol.[3] The thrust of the complaint is that neither company undertook adequate efforts in the United States to update the Allopurinol label or educate doctors about the risk of SJS. (*See generally id.* ¶¶ 20-66). The complaint alleges that this inaction came

---

[2] Shortly after the relevant time period, Prometheus sold the rights to market Zyloprim to another company. (Compl. ¶ 40).

[3] Plaintiff took generic Allupurinol, but contends that Prometheus, as the owner of the branded drug, had certain labelling and pharmacovigilance duties that it neglected. (Compl. ¶¶ 24-29). She further alleges that because generic drug labels must be identical to their branded counterparts, Prometheus's alleged issues with the branded drug were also reflected in the generic version. (*Id.* ¶ 31).

despite material developments in the scientific literature and more adequate warnings provided overseas.  (*Id.* ¶¶ 41-60).

The complaint alleges that Prometheus and Nestle failed to provide adequate warnings to doctors of the SJS risk associated with Allopurinol, despite knowing of that risk and having a duty to communicate it.  (*Id.* ¶¶ 67-76).  As a result, she alleges, Dr. Mintzer made medical judgments concerning her treatment that were not properly informed.  (*Id.* ¶ 73).  That failure to inform Dr. Mintzer is alleged to have directly and foreseeably caused her injuries.  (*Id.* ¶¶ 75-76).

As set forth in greater detail below, the complaint also alleges that Dr. Mintzer was negligent in her diagnosis, treatment, and care of Proulx. (*See id.* ¶¶ 84-87).

### D.      Procedural Background

On August 8, 2019, Proulx filed a complaint in the Superior Court of Massachusetts.  It asserts claims of negligence against Dr. Mintzer (Count 1), vicarious liability against Belmont Medical Associates, Inc. (Count 2), negligence against Larsen (Count 3), negligence against CVS (Count 4), and reckless conduct (failure to warn) against Prometheus and Nestle (Count 5). All claims are asserted under Massachusetts law.

On December 12, 2019, Prometheus removed the case to this court on the basis of diversity jurisdiction.

## II.     Legal Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

A case removed from state court must be remanded "[i]f at any time before final

6

judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).

The removing defendant bears the burden of demonstrating that subject-matter jurisdiction

exists.  *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999).  "The removal

statute is strictly construed, and any doubts about the propriety of removal are resolved in favor

of remand to the state forum."  *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab.

Litig.*, 76 F. Supp. 3d 321, 327 (D. Mass. 2015).

### III.    Analysis

Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between citizens of different States."  28 U.S.C. §

1332(a)(1). [4]  "This statutory grant requires *complete* diversity between the plaintiffs and

defendants in an action."  *Picciotto v. Continental Cas. Co.*, 512 F.3d 9, 17 (1st Cir. 2008) (citing

*Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); *Halleran v. Hoffman*, 966 F.2d 45, 47 (1st

Cir. 1992)).

There is no dispute that complete diversity is lacking here.  Proulx, the plaintiff, is a

citizen of Massachusetts, as are three of the defendants (Dr. Mintzer, Belmont Associates, and

Larsen).  Nonetheless, Prometheus argues that removal was appropriate.  It contends that the

non-diverse parties were fraudulently joined to the action.  In the alternative, it argues that the

claims against non-diverse parties were fraudulently "misjoined" to this lawsuit.

### A.    Fraudulent Joinder

"[U]nder the doctrine of fraudulent joinder, removal is not defeated by the joinder of a

---

[4] The complaint does not allege a specific amount of damages.  However, the civil cover sheet to the
original complaint specifies damages of "$4,280,000+." (Civil Action Cover Sheet (Dkt. No. 1, Ex. A)).  For present
purposes, the Court will assume that the amount-in-controversy requirement is satisfied.

non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant." *Universal Truck & Equipment Co., Inc. v. Southworth-Milton, Inc.*, 765 F.3d 103, 108 (1st Cir. 2014). "Defendants, as the party seeking removal, bear the burden of demonstrating by *clear and convincing* evidence 'either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court.'" *In re Fresenius*, 76 F. Supp. 3d at 332-33 (quoting *Mills v. Allegiance Healthcare Corp*., 178 F. Supp. 2d 1, 5 (D. Mass. 2001) (emphasis in original) (citations omitted).

"An 'implicit finding' within a finding of fraudulent joinder, then, is 'that the plaintiff has failed to state a cause of action against the fraudulently joined defendant.'" *In re Fresenius*, 76 F. Supp. 3d at 333 (quoting *Phillips v. Medtronic, Inc.*, 754 F. Supp. 2d 211, 215 (D. Mass. 2010)) (citations omitted). Although that standard is facially similar to the standard on a motion to dismiss under Rule 12(b)(6), "[i]n analyzing a claim of fraudulent joinder, a court is not held captive by the allegations in the complaint . . . [and may] examine affidavits of the parties." *Mills*, 178 F. Supp. 2d at 5-6. "[I]n determining whether a plaintiff has the possibility of recovery against a defendant, the court is to resolve all disputed issues of fact and ambiguities of law in favor of the non-removing party." *In re Fresenius*, 76 F. Supp. 3d at 333 (citing *Fabiano Shoe Co., Inc. v. Black Diamond Equipment, Ltd.*, 41 F. Supp. 2d 70, 71-72 (D. Mass. 1999)).

### 1.    The Claim Against Dr. Mintzer

Prometheus contends that the complaint fails to state a claim against Dr. Mintzer because

the complaint pleads irreconcilably inconsistent theories of liability.[5]  In substance, it argues that
"[p]laintiff's malpractice claim against Dr. Mintzer is grounded in her purported failure to know
what allegedly was intentionally withheld from her:  information about Allopurinol's side effects
and the need to monitor patients on Allopurinol for SJS."  (Opp. to Mot. at 5, Dkt. 14).

Fraudulent joinder may exist where the allegations against the non-diverse defendant are
directly contradicted by the allegations against the diverse defendant.  For example, in *Baisden v.
Bayer Corp.*, 275 F. Supp. 2d 759, 763 (S.D. W.Va. 2003), the court denied a motion to remand
because the non-diverse defendant had been fraudulently joined.  The court found that "the
impossibility of the claim against the non-diverse defendant[] is implicit in the contradictory
allegations:  1) defendant manufacturer hid the information that 2) non-diverse doctor or
pharmacist knew or should have known."  *Id.* at 762.  In other words, the "case against the non-
diverse defendant[]is undercut, defeated, and made impossible by the claims of fraud and
misrepresentation against the manufacturers . . . ."  *Id.* at 763.  *See also Omobude v. Merck &
Co.*, WL 25548425, *2 (S.D. Miss. Oct. 3, 2003) (("[W]here a plaintiff has specifically alleged
facts from which one would necessarily infer that the defendant in question would not have
known information otherwise alleged to have been misrepresented or concealed from him, then
. . . to sustain his pleading burden, the plaintiff would have to plead at least some facts tending to
show why or how the defendant knew or should have known of the information that has been
misrepresented to or concealed from him.").

It is also true that the "facts" section of the complaint, which comprises 75 paragraphs
over 22 pages of text, portrays Dr. Mintzer as an innocent victim of the misconduct of

---

[5] The claim against Belmont Medical Associates is for vicarious liability and therefore is dependent on the
validity of the claim against Dr. Mintzer.

Prometheus.  It specifically alleges that Prometheus failed to make appropriate disclosures of the risks of Allopurinol to Dr. Mintzer, and indeed willfully defrauded her.  (*See* Compl. ¶¶ 67-76). But Prometheus oversimplifies the allegations in the complaint.  Although the body of the complaint focuses almost entirely on the allegedly wrongful conduct of Prometheus, Count 1, which is the malpractice claim, sets out almost completely separate allegations of medical malpractice.

Specifically, Count 1 alleges six particular forms of malpractice allegedly committed by Dr. Mintzer:  (1) that she "[f]ailed to adequately and correctly diagnose gout" by not ordering certain imaging and lab work; (2) that she "[f]ailed to initiate [various] steps with respect to the diagnosis of gout"; (3) that she "[f]ailed to adhere to the diagnostic criteria for the use or indication for the pharmacological treatment of gout"; (4) that she "[f]ailed to follow American College of Rheumatology ('ACR') treatment guidelines or the package insert recommendations to start patient only after other modalities have failed, and start the initiating dose with 100mg" after establishing baseline renal function; (5) that she "[f]ailed to provide proper follow-up and clinical monitoring," and (6) that she "[f]ailed to use safer pharmacological treatments recommended by ACR."  (Compl. ¶ 86a-f).  None of those claims is based on the theory that Dr. Mintzer knew, or should have known, information concerning Allopurinol that was hidden by Prometheus.

Prometheus contends that these allegations are too threadbare to plead a sufficiently plausible claim for medical malpractice, particularly as to causation.  *See generally Furtado v. Women & Infants Hosp. of Rhode Island,* WL 5886873, at *2 (D. Mass. Oct. 7, 2016) (stating that claim for malpractice under Massachusetts law must plead facts sufficient to show "(1) the existence of a doctor . . . patient relationship; (2) that the performance of the doctor . . . did not

conform to good medical practice; (3) causation and (4) damages").

That is certainly true as to the allegations that Dr. Mintzer purportedly failed to diagnose gout, or failed to confirm the diagnosis.  It appears to be undisputed that Proulx did, in fact, have gout.  (*see* Compl. ¶ 86a-b).  If Proulx was not misdiagnosed, there is no causal nexus between the alleged failure to make an accurate diagnosis, or confirm the diagnosis, and her eventual contraction of SJS.

But other claims are at least sufficiently plausible to survive dismissal.  For example, the complaint alleges that Dr. Mintzer failed to provide proper follow-up and monitoring of Proulx for events associated with SJS.  (Compl. ¶ 86d).  And it alleges that she failed to follow ACR treatment guidelines.  Those allegations are indeed threadbare, but they plausibly plead wrongful conduct that contributed to the alleged injuries, and there is no countervailing evidence, by affidavit or otherwise, in the record.  Under the circumstances, defendants have not sustained their burden of showing that there is "no reasonable possibility" that the Massachusetts Supreme Judicial Court would find that the complaint states a cause of action upon which relief can be granted.  *Universal Truck & Equipment*, 765 F.3d at 108.  Whether there is actually any evidence to sustain those allegations is, of course, a question for another day.

## 2.     The Claim Against Larsen

In any event, the complaint also alleges a claim against Larsen, the pharmacist, for failure to warn under Massachusetts law.  In *Cottam v. CVS Pharmacy*, 436 Mass. 316, 317 (2002), the SJC was faced with a negligence claim against a pharmacy arising out of a drug side effect.  The court held that although a "pharmacy has no [general] duty to warn its customers of the side effects of prescription drugs," it may voluntarily assume such a duty.  *Id.* at 321 & 325-26.  The scope of the duty, however, is a "fact-specific inquiry."  *Id.* at 324.  In that case, the court held

that the pharmacy had assumed a duty to the plaintiff by providing him with a "long form" warning that a patient "could reasonably interpret [] as a complete and comprehensive list of all known side effects." *Id.* at 325. The court distinguished such a warning from a "single label containing only one specific warning" or other narrow communications that could not be reasonably construed as comprehensive. *See id.* at 326 (citing *Frye v. Medicare–Glaser Corp.*, 153 Ill.2d 26, 32-34 (1992) (holding that pharmacy did not assume duty to warn of all side effects when it merely affixed label warning that drug might cause drowsiness)).

Here, the complaint alleges that CVS, through Larsen, provided Proulx with a "Patient Prescription Information" form. (Compl. ¶ 12). That form was allegedly supplied in place of the FDA-approved generic Allopurinol warning label in use at the time. (*Id.* ¶¶ 12, 95). It alleges that Larson and CVS voluntarily undertook a duty to warn by providing the form, and that the warning given was incomplete. (*Id.* ¶¶ 93-95). *See also Jenner v. CVS Pharmacy, Inc.*, WL 1085981, *2-3 (D. R.I. 2011) (finding that complaint stated claim under *Cottam* against pharmacy, defeating defendant's argument of fraudulent joinder). Specifically, it alleges that the information provided by CVS warned of a very serious possible allergic reaction, but did not include the early warning sign of eye irritation. (Compl. ¶¶ 81-83).

Prometheus seeks to distinguish *Cottam* by noting that the complaint refers to the warning given to Proulx as "abridged" and that Larson is not specifically alleged to have orally consulted with her. (Opp. to Mot. at 8-9). But the word "abridged" as used in the complaint does not refer to a complete, but shorter, warning; instead it refers to an incomplete warning "that omitted key information." (Compl. ¶ 81). As for the second point, the pharmacist's oral communications in *Cottam* were likely relevant to the duty assumed. *See Cottam*, 436 Mass. at 318 ("CVS policy also required its pharmacists to review the information on both the long and

short forms with the customer."). However, the decision did not rest upon the fact that an oral warning had been provided, but whether the totality of the pharmacy's communications could be reasonably construed as comprehensive. *See generally id.* at 326 ("Where, however, a pharmacy provides a more detailed list of warnings, or, by way of advertising, promises to provide customers with information, it may thereby undertake a duty to provide complete warnings and information. We thus conclude that, even had it been raised below, CVS's argument that it did not assume a duty to warn of all side effects would be unavailing."). The fact that no oral warning is alleged to have been given here is therefore not dispositive.

In short, the complaint states a plausible claim against Larsen for violation of a voluntarily assumed duty to warn, and again there is no evidence in the record to suggest otherwise.

### 3.  Conclusion

In summary, Prometheus, as the party seeking removal, bears the burden of demonstrating by clear and convincing evidence "either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court." *In re Fresenius*, 76 F. Supp. 3d at 332-33 (quotations omitted). The complaint states plausible claims against Dr. Mintzer, Belmont Medical Associates, and Larsen, and the Court has been directed to no additional information, such as affidavits, suggesting the contrary. Accordingly, those parties were not fraudulently joined to this action.

### C.  Fraudulent Misjoinder

In the alternative, Prometheus contends that the claims against the non-diverse defendants were fraudulently misjoined.

The doctrine of fraudulent misjoinder, sometimes called procedural misjoinder, was first articulated by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds by *Cohen v. Office Depot Inc.*, 204 F.3d 1069 (11th Cir. 2000).  The doctrine prevents the misjoining of a party against whom a viable claim exists (thus surviving fraudulent joinder scrutiny), but who does not have a "real connection with the controversy." *Tapscott*, 77 F.3d at 1360 (quotations omitted); *see also* 14C Wright & Miller, Fed. Prac. & Proc. § 3723.1 (4th Ed. 2020) (describing fraudulent misjoinder doctrine).  Under the doctrine, "mere misjoinder" will not suffice, and a misjoinder will only be fraudulent if it is sufficiently "egregious." *Tapscott*, 77 F.3d at 1360.

Perhaps because of this ambiguous language, "[m]any courts, [], 'have foundered on shoals of tautology in trying to define fraudulent misjoinder.'" *Palmer v. Davol, Inc.*, WL 5377991, *2 (D.R.I. Dec. 23, 2008) (quoting *Palermo v. Letourneau Tech. Inc.*, 542 F. Supp. 2d 499, 523 (S.D. Miss. 2008)).  "District courts addressing a procedural misjoinder argument have reached 'divergent conclusions on whether (and how) to apply the doctrine' and have determined that the doctrine involves many 'unsettled questions.'" *Id.* at *3 (quoting *Geffen v. General Electric Co.*, 575 F. Supp. 2d 865, 869-70 & n. 5 (N.D. Ohio 2008)).

The First Circuit has not to date recognized the doctrine of fraudulent misjoinder.  Two district courts within this circuit to have considered the issue both rejected the doctrine outright.  Each found its adoption inappropriate in light of the unsettled legal landscape and the rule of strict construction regarding removal statutes.  *See Cambridge Place Inv. Management, Inc. v. Morgan Stanley & Co., Inc.*, 813 F. Supp. 2d 242, 246 (D. Mass. 2011); *Palmer*, WL 5377991 at *4.

This Court need not resolve the issue here.  Even if the doctrine applies, the non-diverse

parties are likely not misjoined, and in any event not egregiously so.  Fed. R. Civ. P. 20 allows

for defendants to be joined into one action if  "any right to relief is asserted against them . . . with

respect to or arising out of the same transaction, occurrence, or series of transactions or

occurrences" and "any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(2).  That standard is typically applied using a case-by-case approach.  *See* 14C

Wright & Miller, Fed. Prac. & Proc. § 1653 (4th Ed. 2020).

 Arguably, at least, the claims do not involve a single transaction or occurrence.  The

claim against Prometheus and Nestle involves the marketing, testing, and reporting of

Allopurinal, whereas as the claims against the non-diverse defendants involve Dr. Mintzer's

diagnosis and treatment and a separate warning provided by the pharmacy.  *See Smith v.

Hendricks*, 140 F. Supp. 3d 66, 75 (D.D.C. 2015) ("The factual basis for the claims against

Boston Scientific pertains to research, development, production, and marketing of the Advantage

system; the factual basis for the claims against the Healthcare Provider Defendants pertains to

Plaintiff's treatment by and interaction with her healthcare providers.").

 But that conclusion ignores the multiple elements common to all of the claims.  For one

thing, Proulx's injury is the same across all claims:  she suffered from a serious adverse reaction

to the drug, and all the parties involved are accused, in their own way, of somehow causing or

contributing to it.  Furthermore, the allegations against all defendants involve overlapping and

interrelated facts, risking inconsistent judgments.  For example, if the cases against Prometheus

and Dr. Mintzer are severed, Dr. Mintzer could be found liable for not pursuing safer treatments,

but Prometheus could be found liable for failing to inform doctors that other treatments were

safer.

 Finally, and in any event, even if the Court found that this were misjoinder, it is not

egregious.  This case involves a single plaintiff and a single set of injuries, allegedly caused by the ingestion of a single drug, not the joinder of wholly separate and unrelated claims.  In short, even assuming the doctrine of fraudulent misjoinder exists, it does not apply in this circumstance.

## IV.    **Conclusion**

For the foregoing reasons, there is not complete diversity of citizenship among the parties, and therefore this Court is without subject-matter jurisdiction over this matter.  Plaintiff's motion to remand is GRANTED, and the case is hereby REMANDED to the Massachusetts Superior Court.


**So Ordered.**

/s/ F. Dennis Saylor, IV
F. Dennis Saylor, IV
Dated:  June 11, 2020                                     Chief Judge, United States District Court